Good morning. May it please the Court, my name is Peter Ashman, and I'm here on behalf of Mr. Ivan Ivanov. Your Honors, the issue presented in this appeal is what significance – excuse me, sorry – to what significance do we attach the respondent, in this case, is right to counsel? And as you know from reading the briefs, this is a case where an individual is representing himself in an immigration deportation proceeding. Counsel, this is a civil case, isn't it? Yes, sir. Typical civil case, if a client wants to hire an attorney, they're free to hire an attorney, right? That's correct, Your Honor. You don't have statutory rights to an attorney in a criminal case – I mean, in a civil case, as you do in a criminal case, do you? Well, Your Honor, this court, the Ninth Circuit, has held that the Fifth Amendment guarantees individuals subject to deportation proceedings receive due process. That's true. And the process is he, the alien, can hire an attorney, and he can be heard administratively, and he can appeal to an Article III court, and he can go to the Supreme Court, and under the rules of evidence, be a judge by the BIA, and so on. Oh, that's process, which he's – which you don't claim he's been deprived of. It's just, if he couldn't afford an attorney, he could represent himself. He still could be heard in a process sense. Well, Your Honor, we feel that in this case that he didn't have the opportunity to be heard, even if you set aside for a moment the argument of whether or not he was – What government action deprived him of an attorney? I think that's – I think your point's well taken. He was not told he could not have an attorney. That's true. But in a – But it was the contrary, wasn't it? Pardon me? Wasn't he told at the initial hearing he could employ counsel of his own choosing? He was advised that he could employ counsel of his own choosing, Your Honor. That's correct. So he knew he had the right? He did. Okay. But when he tried to exercise that right at a later date, a period of time passed by, he tried to obtain counsel. It's in the record that he made efforts to try to obtain counsel, but was unable to raise the funds to do it. Did the Immigration Service give him a list of attorneys or representatives that would assist him in his case? Your Honor, I think from the record, the only thing that's clear is that he was given a list of Catholic charities to go see. Did he pursue that? I don't know, Your Honor. Or do we know? I don't think that's very clear in the record whether he did go to Catholic charities or not. There is a list that is given the respondents at these hearings, and it does contain attorneys' names on them. However, most of the attorneys on that list are in Phoenix, Arizona, not Las Vegas, where the respondent was being heard. Now, I think I'm in agreement, at least with the implicit material behind Judge Visor's question. I don't think there's a due process right here, but I'm not sure that's necessarily the standard that we're judging. Is this an abuse of discretion question? Yes, Your Honor, and I think that's the point I was trying to make, maybe not very artfully, but I was hoping to get to it. When this person did have his day in court and was present in court, he was not able to tell his story. He was not able to put forward his evidence. He was not asked the types of questions that would allow him to tell his full story. The IJ states that the respondents do have a right to present testimony and to present witnesses and that they're supposed to be advised of that right. One of the things that happened here is that he shows up and he says, I've got a friend here with some money who can hire me a lawyer. And the IJ says, but you had a chance. You were warned that if you came here without a lawyer, you'd have to proceed without a lawyer. And then the IJ says, it's probably a better idea for me to ask you questions rather than for you to ask yourself. And the only reason I'm going to be questioning you is to give you a chance to present your story. And if there's something I don't give you a chance to describe, you can tell me that there's something else you want to say at the end of your testimony. Now, as I read that, although it's not quite stated this way and as a matter of formality, of course, it isn't that way, the IJ is basically volunteering to act as his lawyer. Is that a good substitute for him having a lawyer? I think in the portion that you refer to, that's correct. That was at the beginning of the hearing. But if you read the transcript of what ensued after that, it's pretty plain to see that the respondent wasn't given a fair hearing. He wasn't able to ask questions. In fact, he was told repeatedly such things as, you're not here to tell us your story. You're here to answer my questions. By the end of the hearing, his lawyer, if I can say it that way, didn't like him very much. I think that's pretty clear from the record. And I think that was part of the problem. I think, you know, we're humans, and this individual may be graded on the judge somewhat. But I don't think that's a reason to curtail someone's ability in their day in court. I'm not clear as to your answer to Judge Fletcher's question as to standard of review. What was the abuse of discretion here in denying a further continuance? Well, the immigration judge has discretion to grant or to deny a continuance. I think that's clear. But I think that Bair's case that I've cited in my brief says that that decision to grant or deny a continuance should be based on more than just a desire to, I think the exact term was expeditiousness of the judge's calendar, that there needs to be more consideration than that, and that that was an abuse of his discretion. Because when you balance the two sides, when you balance the fact that here was an individual from a foreign country, was not familiar with the English language, was not familiar with the judicial system, and had the threat that he would be forced against his will to return to a country that he claimed he had a reasonable fear of persecution versus something that we don't even know why the judge wouldn't grant him a continuance other than apparently he was annoyed with this individual. And the record shows that he was given six months to get an attorney, and he was told that if he didn't have an attorney, he would proceed representing himself. Isn't that right? I think that is true. But I think after that happened, and I would concede that he did have warning that he needed to have an attorney present with him at the next hearing. But I think it goes beyond that. I think it's more important than that, because you could see what happened in the hearing and in the course of the hearing, why the need for him to have an attorney present was so important. He was willing to do that. He was willing to pay for it. And I think given what happened in the course of the hearing later on, it showed why it was important that he have an attorney present, to frame his questions, to assist him to present his testimony, his evidence. That's a problem that every person who represents himself faces, isn't it? And you mentioned that he had problems with the foreign languages. Isn't that true for most people who come from a non-English speaking country? That's correct. Was this the first time he asked for a continuance in order to obtain a lawyer? Yes, it was, sir. That is to say, there have been a number of continuances, but they all looked like administrative convenience continuances. Correct. Things like there wasn't a translator available at his first or second hearings. So I don't think he had ever asked for a continuance before this one. That's correct, Your Honor. This is six months after being told to seek an attorney, right? That's true. Yes. Your Honor, I see that I have two minutes remaining. If it pleases the Court, can I reserve for rebuttal? That's probably a good idea. Let's hear from the government, and then you've got some time. Good morning, Your Honors. May it please the Court, my name is Thankful Vanderstar, and I represent the Attorney General in this matter. Your Honors, what we're addressing here is whether or not the immigration judge's denial of Mr. Ashman's request for a continuance was an abuse of discretion. In other words, whether it was irrational or arbitrary or contrary to law. So we're all in agreement, then, that this is an abuse of discretion standard, not a constitutional standard? Yes. Okay. Yes. Your Honor asked Mr. Ashman at the end whether there had been any previous requests for continuances, and the government agrees that this was the first request for a continuance. However, what's important to note is the course of the proceedings from when they were begun. There was a hearing on September 25, 1998, at which Mr. Ivanov was advised of his right to get an attorney. In fact, advised that he could get one for free or a lower fee and was given a list of those groups and organizations. Again, at the October 1, 1998 hearing, he was advised of his right to obtain counsel. Then at the November 19, 1998 hearing, again, in fact, he was advised twice. And where were there were, and I lose track a little bit, some of the early hearings were in Arizona. When did he first have a hearing in Las Vegas? Oh, Your Honor, that I don't know. Because he was incarcerated in Arizona at the beginning, I know. Yes. So I'm trying to figure out, okay, when did they let him out of jail so that he actually could start walking around and looking for a lawyer? My recollection... I know at some point he bonds out, but I don't know how long it is. Right. My recollection is that it's sometime around those early October hearings. In other words, that it was fairly quickly. Yes, so he had a fair amount of time. Yes. Okay. Yes. At that November 19 hearing, he was told twice, you may have an attorney, and if you do not come to the next hearing with an attorney, this case will proceed. Yes, I think he's been told that actually quite clearly. Yes. I don't know. Yes. So there was no abuse of discretion. The immigration judge was well within his discretion to determine that Petitioner had been given ample time and opportunity to... What do we do, though, when... Because I think I have no trouble with, under these circumstances, ample warning, ample time, no showing that he did not understand the warning, that, okay, we're going to go forward without a lawyer. Now, maybe it would have been sort of a kinder thing to do when he shows up and says, I've got a friend with money to do, but I'm not sure it's something that we're in a position to reverse, if that's all we have. But then we have the judge who is doing the questioning becoming hostile awfully quickly. And I don't know whether I should be doing this, but I looked up on the Internet. This judge, as of the last thing I could get off the Internet, has held 416 asylum hearings and granted one. I don't want that guy as my lawyer if I'm seeking asylum. So what do I do when I put into this not only that a lawyer has been denied, but this is the person who's questioning me? Well, Your Honor, first of all, although what you discovered on the Internet certainly sounds compelling... Well, I don't know if it's compelling. I don't want to push it that hard. I'm trying to work my way through how I'm supposed to think about this. I think that the court needs to look at this case, the particulars of this case, the particulars of how things went throughout the proceedings, not just at that asylum hearing. After reading through the entire transcript of these hearings, the petitioner, with all due respect, was a frustrating individual. Yes. He went off on tangents. A very frustrating individual. He discussed his marriage and his child, and there was a whole issue about was he a battered spouse that came up, which, by the way, the immigration judge allowed him to pursue that and discussed it with him. That was actually before his hearing. That was in one of those earlier things. Yes, that's correct. That was not at the hearing in front of the IJ. That's correct. Yeah, yeah. Mr. Ivanov had plenty of opportunity to say everything that he wanted to say, and there is some case law. I don't have any of the sites off the top of my head, but this Court has issued decisions wherein the immigration judge has become frustrated and has tried to get the petitioner to back on track, that sort of thing. And that's not an inappropriate way to conduct proceedings. An immigration judge is the one who needs to keep the proceedings on track in the interest of judicial economy and efficiency and, frankly, in the interest of the court. Or it may not be reversible, but it could be inappropriate. Agreed. To be abusive. Agreed. To display your temper, to characterize the individual as this judge did. Well, Your Honor, I would submit that from a reading of the transcript, yes, there were times that the immigration judge said, Mr. Ivanov, you are not answering the questions as I'm putting them to you. You are not allowing the interpreter to interpret. You are frustrating these proceedings. There are also times when he says, be quiet. There are also times when he says, you're one of the most rude individuals I've had in front of me. There's also a time when he says, nobody asked you to come to this country. Nobody told you the streets were paved with gold. That's all. I think those are all direct quotations from the IJ. That's all correct. And he also said, it doesn't surprise me that Respondent has had some difficulties in Bulgaria because he, it seems to me, has very little interest in conforming his behavior to the norms of society. I don't dispute those quotations from the record. What I'd like to point out is other parts of the hearing, other parts of the immigration judge's conduct where he took great pains to explain the process and the procedure to the petitioner, where he took great pains to say, well, since you don't have an attorney, I'll do the questioning. Here's why. And here's why. And certainly I want you to be able to say whatever you want to say. So if I haven't steered you in a direction you want to go. Of course, he doesn't let him say whatever he wants to say. He says, be quiet. He says, I don't want to hear about your wife. I don't want to hear about that. Now, I understand what the IJ is doing. He's trying to keep him on track for what the IJ thinks, I think, for the most part, correctly, is legally relevant material. But he's got himself a lay person there who's trying to explain his story in a difficult, confused, and frustrating way. And he keeps telling him to be quiet. Well, but, Your Honor, Mr. Ivanov was able to tell his story. He gave his asylum claim. He talked about his teaching, being fired from his teaching positions. He was able to testify about his two arrests. And there has been nothing presented by counsel regarding any evidence that he was foreclosed from presenting to the immigration judge. Although, you know, again, I'm not sure it's reversible. I was struck by the time we're finished with the IJ questioning Mr. Ivanov, and then we get to the government attorney questioning Mr. Ivanov, which should be the cross-examination, which makes the story worse. It's not until the government is questioning Mr. Ivanov that we find out that his uncle was a problem, that his uncle fled the country. After his uncle fled the country, the authorities parade his supposed coffin around filled with rocks, that his mother is jailed, that a cousin is killed. We find that out when the government is questioning. We didn't find that out when the IJ was questioning, saying you can say anything you want. The IJ didn't bring out any of that stuff. That's true. I would point out that those incidents, the uncle, my recollection is correct, the uncle left Bulgaria in 1915. Before he was born. Yes. No, I'm not saying that we have a compelling case based on that, but in terms of what favorable information he has was not brought out during the questioning by the IJ. Well, however, it was brought out. And we don't have the situation where we got to the end of the hearing and, for example, we don't know whether Mr. Ivanov would have raised his hand and said, oh, wait a minute, there's something that you didn't let me testify about. Well, all I know about Mr. Ivanov's claim is what is in the actual record. And if I were left to figure out what's in Mr. Ivanov's claim based upon what he was able to present during direct testimony, when the IJ says you can say anything you want but then doesn't let him do it, well, half of his claim isn't there. How do I know there isn't something else there that a confident lawyer could have brought out? Well, there's, in counsel's opening brief to this court, there is nothing presented in terms of here is evidence that should have been brought in that was not because of the way the questioning happened. Here is what he would have testified to but for the fact that he was intimidated or frightened or told to be quiet. Here is the missing part of his claim. Now, understandably, that would essentially be evidence outside the record, but certainly it's valid to bring that sort of thing up when the claim is my petitioner did not get a fair hearing and was unable to fully develop his claim. And we simply don't have any discussion about what other parts of his claim he would have presented but for the conduct of the hearing. I don't know how much contact you folks have with the IJs, but there's something about this that's obviously a little troublesome. We have very little contact with the IJs. Okay. Well, there's still part of the Department of Justice now, right, under the reorganization? Yes. And you still have a division of professional responsibility to which the public has access for complaints, right? That's correct. That's correct. If there are no other questions, the government submits that it was not an abuse of discretion for the immigration judge to deny Mr. Ivanov's request for continuance to obtain an attorney, and that there was essentially no due process violation in the conduct of his hearing, because ultimately he was not prejudiced. He was able to present his claim, which on the record that we have, was not a claim worthy of being granted asylum. Okay. Thank you. Thank you for your argument. And I think you've saved about two minutes. Well, really briefly, a couple of things. This is a matter of due process. And the Court ‑‑ this Court has held that ‑‑ Which issue is a matter of due process? The fact that this individual is not allowed to have a fair hearing. He was bullied. He was intimidated. And he was not able to get his story out. We have the immigration judge saying things like, when asked about his teaching career, saying, sir, I don't want to know what's going on. I just want you to answer the questions. How can a person in that situation feel comfortable to tell his story fully and completely and have his day in court? Is there anything in the record before the BIA or before the IJA on a motion for reconsideration in which the claimant sets out all of this material you're talking about that's claimed to be omitted from the record? Where is this material? Where do I find it? I want to know what it says. Like his home visits and so on. His persecution when he got back and returned twice for funerals. Stayed a month at a time or so. Yes. So there is no motion for reconsideration filed. This individual was not represented by counsel in a fashion that would have allowed that at that point in time. But you're here arguing a record, counsel, and you're claiming that there is material that's omitted from the record. I don't know what it is. How do I find it? Well, I think the only way that that can be done is on remand. I think there are some things that are clear in the record. It's his burden to prove a case, isn't it? Isn't he the Petitioner? He is the Petitioner, but he also ---- He has a burden of proof element to these things? He's got to show that he's been persecuted and he's entitled to asylum in the United States, right?  That's the process that Congress has laid down for doing that.  And you come in at the appellate level and say there's a whole bunch of material here that we never heard about and we can't get access to it. And it's prejudicial. I don't believe I've ever made the statement to this Court at any point or to the BIA that I had a whole suitcase of additional evidence and facts to bring forward. There's none, right? I can't make that assumption either, Your Honor. As far as the record is concerned. The problem with the record, and the record's clear, he did not get a chance to put his case on. Does he have more things to tell the Court? I can't represent that to this Court. Okay. But I think ---- That's where we're coming from. Yeah, we don't know either. And I think that's the problem. That's why he didn't have a fair hearing. We can see enough from the record that shows that he was cut off. He was told to be quiet. He was told I don't want to know what's going on. Just answer my questions. He was told stop shuffling through those papers. If you don't know, you don't know. He was told that you can say anything else that you want, you think has merit and is relevant to this case when I get through asking you a few questions. That's what the I.J. told him at the hearing. And it was translated for him. But by that time, Your Honor, he had been so intimidated and so bullied that how could anyone in his situation feel comfortable in talking at that point? No. I think he had a little more spine than that. Well, I think in summary that there should be a balance between the delays that were caused by his failing to obtain an attorney in a timely fashion, bearing in mind that he did only request one time to have his case continue to obtain counsel, and he represented to the court that he had the funds and the means and the ability to do so. And I think what happened afterwards demonstrates clearly that he needed to have continued the case to allow him to obtain an attorney. It wouldn't have been anything. Thank you. We have the argument well in hand. Thank you both for a good argument on both sides in a difficult case. Thank you. The case of Ivanoff v. Ashcroft is now submitted for decision.
judges: Beezer, Alarcon,w. Fletcher